IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFERY S. DAWSON | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | |
| | * | |
| STRATICON CONSTRUCTION | * | CASE NO. JFM-03-CV6 |
| SERVICES, L.L.C. | * | |
|     Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

The Plaintiff Jeffrey Dawson has filed an eleven paragraph one count Complaint alleging a violation of Title VII EEOC USC § 2000 based upon alleged racial discrimination against him personally.  The Defendant, Straticon Construction Services, L.L.C., (hereinafter referred to as Straticon), is a corporation that was alleged to do business in the Virginia and Maryland area but no longer does business in Maryland. The Plaintiff has alleged that the discrimination occurred during his employment when he worked for the Defendant, Straticon.  He worked for that firm between the dates of July 5, 2001 to February 22, 2002 when he was discharged. Subsequently Plaintiff, filed a complaint with the Baltimore City Community Relations Commission. There was no determination from that Commission as Plaintiff sought a Right to Sue letter prior to a determination.  He filed the Complaint at bar in this matter. A deposition and interrogatories propounded to the Plaintiff have produced sufficient undisputed material facts  in which to determine the Plaintiff's position and affidavits in support of the Summary Judgment to  render a summary judgment in favor of the Defendant pursuant to the Federal Rules of Procedure, Rule 56.

Although the Defendant denies any wrongdoing, for the purpose of this Motion the Defendant is presenting the facts alleged in the Plaintiff's deposition and his answers to interrogatories as undisputed.

The following material facts are alleged as undisputed:

1) The Plaintiff was an employee of Straticon as a Project Manager during the dates in question.

2) There was no written agreement of employment entered into between the Plaintiff and Straticon. (See Deposition of Jeffrey S. Dawson, dated June 25, 2003, hereinafter referred to as Dep., at page 9, line 21-page 10 line 2).

3) That the employment was "at will" subjecting the Plaintiff to dismissal at any time.

4) That the Maryland Office was a new division for Straticon that had approximately seven or eight individuals employed by the Defendant. (Dep. Page 48 line 7).

5) That Mr. Dawson was dismissed on or about February 22, 2002. That Mr. Dawson did not have a clear reason for this dismissal and his termination discussion occurred with Bret Comar and Mike Finn during a conference call. Mr. Comar and Mr. Finn are supervisors with the Defendant. (Dep. Page 53 line 2-18). They allegedly indicated that there may have been at least one client quite upset with him. ( Dep P. 54 line 1-3).

6) That the Plaintiff never received or was sent any written documentation of the termination and other than an alleged concern about a client no other reason was allegedly provided to him. ( Dep. Page 53-55 line 2).

7) All of the Plaintiff's alleged discriminatory concerns relate to the actions of one individual, a Mr. Nick Fornaro, and not to any other member or employee of Straticon. (Dep. P. 56 l. 7-10)

8) The Plaintiff was actually terminated by Bret Comar, a supervisor of Mr. Fornaro.

9) The Plaintiff lists the following reasons he believes his firing was done in violation of Title VII :

a) Mr. Nick Fornaro, allegedly, in the first week of October of 2001, ( Dep. Page 70 line l7 -18) said in an overheard conversation to another person over the telephone "this black M\_\_\_\_ F\_\_\_\_ is trying to take my job." However, Mr. Dawson did not hear who Mr. Fornaro was talking to or anything else suggesting that he was the subject of the conversation. (Dep Page 71 line 5- Page 72 line 5)

b) Mr. Fornaro allegedly asked him to stick around and talk to him about a project on or around the first week of November, 2001 and stated "If you try to take my job, I'm going to cut your black nuts off." There was no one around to hear this conversation. (Dep. Page 74 line 7-13). The complaint filed with this court, in contrast, states that the conversation was allegedly made on a cell phone to the Plaintiff and the word black is not included. (Dep Page 78 line 9-14)

c) That on or around December 2001, after an alleged conversation with Mr. Comar, in which Mr. Fornaro's behavior was seen as a little better toward the Plaintiff, (Dep. page. 84 line5-7) that Mr. Fornaro allegedly stated " I did not think you were like the rest of them." (Dep. Page 84 line 8). Plaintiff allegedly also indicated that in his discussion with Brett Comar, Mr. Comar indicated he was going to take specific action and that everything was going to be all right. Mr. Comar was going to make sure Plaintiff stayed away from Nick Fornaro and make sure that Plaintiff was in the field and Mr. Comar called twice a week to make sure Plaintiff was okay. (Dep. Page76 L. 4-10).

d) On or about January18, 2002, Mr. Fornaro in a telephone call to Plaintiff discussing an uncompleted job, allegedly said "you know what, on this job you are a failure. You are a failure,

ni" and hung up, the sentence was allegedly not completed. The Plaintiff assumes that the fact that the call was terminated has discriminatory meaning. (Dep. Page 86 L. 7-12).

 e) That Mr. Fornaro capitalized the words "You got an executed [contract]" in an e-mail which was not produced (Dep. Page 56, L 18-19). That the Plaintiff admitted that the words executed or contract do not have a racial component. (Dep. P 69 L.6-9).

 f) That Mr. Fornaro asked him if he would like to go hunting. ( Dep.Page 57 L. 3-4).

 g) That Mr. Fornaro allegedly wrote in a e-mail to another employee that "Jeff is a black jackass" but the Plaintiff refused to provide the name of the person who allegedly received this e-mail. (Dep. Page 59 L. 15-21) nor was this e-mail either read or seen by him. (Dep Page 61 L. 11-14).

 h) That Mr. Fornaro had allegedly written a condescending e-mail to Mike Finn that stated he could not work comfortably with Mr. Dawson, (Dep. Page 62 L. 11- 18). He allegedly received this information from a Sheila Hawkins. He has no contact information for her and although he promised to provide same, never presented it to counsel.

 i) That there were allegedly e-mails that were seen by another employee, Don DeSilva, from Mr. Fornaro, who did not reveal their content to Mr. Dawson which Mr. Dawson alleges "put him down". However he never saw those e-mails and [Mr.Desilva] allegedly only stated that the e mails would hurt his feelings. (Dep. Page 64 L. l8-14). The plaintiff admits that there is no fact that the Plaintiff could rely on to say that these e-mails had a racial component to them. ( Dep. Page 65 L. 11-page 66 L. 2).

 j) That there was a Christmas party where Mr. Fornaro allegedly stared at him (Dep. Page 88 L. 20-21)

 10) Mr. Fornaro was fired a week later. Mr. Finn was fired two weeks later. ( Dep. Page

89 L. 21- page 90 L. 3) .

      11) Mr. DeSilva is no longer working for Straticon. ( Dep. Page 92 L. 20 - Page 93 L. 2).

      12) That Straticon closed the Baltimore Branch entirely. (Dep. Page 93 L. 3-6, page 94, L. 13-15). As a result they terminated other employees and closed the office at 10 North Calvert Street, removed and distributed furniture from that office, were not bidding on projects in Virginia or Maryland, (Dep Page 100 L.10-16) and Defendant did not open up an anticipated Northern Virginia Branch. (Dep. Page 93L. 7-9)

      13) That as of October of 2002, Straticon, was not doing business in the area. ( Dep. Page 100 L. 6 - 15.)

      14) That Mr. Dawson was unemployed for approximately seven weeks and is earning much more that he was earning at Straticon. (Dep. Page 13 L. 5 through Page 14 L.10).

      15) That Mr. Dawson received no medical or psychological treatment nor is he making any claim for such treatment. ( Dep. Page 17 L. 8-19).

      16) That the Plaintiff concedes that Brett Comar did not do anything racially discriminating. (Dep. Page 76, L. 13-15.)

      17) That there is no other individual (other than Mr. Fornaro) alleged by the Plaintiff who was in any way discriminatory toward the Plaintiff ( Dep. Page 104 L. 13-20).

      18) That the only claim the Plaintiff has is premised based upon Mr. Fornaro's actions and Plaintiff has conceded that if anyone else fired him for any other reason other than discrimination he would not have a complaint.(Dep. Page 105 L. 4-7).

      19) There was no eyewitness to any alleged act of discrimination. (Dep. Page 118 L. 11-15).

      20) That the only claim of damage that the Plaintiff has is for lost wages. (Dep. Page 112

L. 20- page 113 L. 1), which was tabulated to be Five Thousand Six Hundred Dollars ($5,600.00) and an alleged bonus of Twelve Thousand ($12,000.00) which would be reduced by the payment of unemployment insurance paid to the Plaintiff of Seven Hundred and Thirty Five Dollars ($735.00). (Dep. Page 117 L. 20-22).

21) That both Mr. Finn and Mr. Comar, the individuals who actually terminated the Plaintiff have executed affidavits, attached hereto, which confirm that they terminated Mr. Dawson. The affidavits further explain that the company was having financial difficulties, laying off individuals and affirming that they did not terminate Mr. Dawson for any discriminatory reason. Further, the affidavits confirm that Mr. Nick Fornaro did not influence their determination to terminate Mr. Dawson.

**Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*; *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990). A genuine dispute exists if a reasonable factfinder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-48, 106 S.Ct. 2505. Only disputes over facts that might affect the outcome of the case under governing law will preclude summary judgment. *Id.* at 252, 106 S.Ct. 2505; *Thompson Everett, Inc. v. National Cable Advertising*, 57 F.3d 1317, 1323 (4th Cir.1995).

The moving party bears the initial burden of demonstrating that there is no genuine issue as to any material fact. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). The moving party may meet this burden by demonstrating the absence of evidence to support the

non-moving party's case. **Celotex Corp. v. Catrett**, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

  The Defendant in this matter has admitted that the only individual that allegedly acted in a discriminatory fashion toward him was his supervisor, Mr. Fornaro.  No other party is alleged to have acted in a discriminatory manner other than Mr. Fornaro.  There is no evidence that the termination of the Plaintiff is in any way related to his race, national origin, religion or any other suspect class.  His allegations all revolve around concerns of a manager who did not in fact terminate him.  Even those allegations are speculative..  Taken at their face value, Mr. Dawson overheard a conversation that may not have concerned him and was clearly not directed toward him, alleged e-mails that he never saw, capitalization of normal business words, and  innocuous business invitations.  At the same time, Plaintiff ignores the legitimate financial and business problems that the employer was facing at the time of the termination, which included termination of other individuals before and after him not limited to the termination of the alleged discriminating supervisor, the actual closing of the location,  the determination to not seek future business in the area, and  the fact that non-discriminating supervisors terminated him.   The Plaintiff allegations are mere conjecture that throughout the closing down of this location he was somehow racially discriminated against when other similarly situated employees lost their employment due to legitimate business concerns.  A clear reading of his attempt to minimize the closing of the Baltimore facility in the deposition and the extent to which he stretches the fact that one person was transferred to New York somehow meant that the Baltimore branch was still functioning is an example of how he stretches clutches of phone conversations, half sentences on cell phones, and other dubious interpretations of events to allege that even Mr. Fornaro had done anything with a discriminatory intent.

The Defendant supplied through affidavits of both individuals who actually terminated Mr. Dawson, the specific and non discriminatory reasons for the Plaintiff's termination and that Mr. Fornaro did not influence them in their decision.

B. Disparate Treatment/Discriminatory Discharge

A plaintiff asserting national origin or race discrimination under **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e-2 et seq., must demonstrate that his employer acted with discriminatory intent in taking an adverse action against him. Discriminatory intent can be shown by direct evidence or by circumstantial evidence using the three-step burden shifting scheme enumerated in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). **Karpel v. Inova Health Sys. Serv.**, 134 F.3d 1222, 1227-28 (4th Cir.1998). In order to establish a prima facie case of discrimination because of his race and/or national origin, plaintiff must show that 1) he is a member of a protected class; 2) he performed his job satisfactorily; 3) he suffered from adverse employment action; and 4) similarly situated employees who were not minorities received more favorable treatment. **Hudson v. Joseph B. Fay Co.**, 902 F.Supp. 85, 88 (D.Md.1995). The Plaintiff cannot show that he performed his work satisfactorily or that similarly situated employees who were not minorities received more favorable treatment. In fact, supervisors above him received the same or similar treatment. Nor do the facts alleged as discriminatory rise to the appropriate level of proof necessary for this court to consider the issue. In the present case, as in **Fisher v. Maryland Dept. of Housing and Community Development**, 32 F. Supp. 2d 257, affirmed 166 F. 2d 1208. there is no pattern of racial or insensitive remarks, there are only isolated incidents. Stray remarks by employees do not demonstrate an Employer's intent to discriminate, for purpose of civil rights statute protecting all

persons from racially motivated deprivations of enumerated rights, even when the decision maker consults with those employees in reaching his decision. 42 U.S.C.A. Section 1981, **Farasat v. Paulikas**, 32 F. Supp. 2d 249

Assuming arguendo that the Plaintiff has established a prima facie case, the burden of production shifts to the Defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action. **Reeves v. Sanderson Plumbing Prod. Inc**., 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000) (quoting **Texas Dep't of Cmty Affairs v. Burdine**, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  The Defendant has done so, with the clear explanation that conceded and undisputed business reversals caused the downsizing and closing of the entire Baltimore and Maryland locations. (see Dep. and  attached Affidavits).

## CONCLUSION

The Plaintiff was a non-contract at-will employee who was terminated in compliance with his contract during a downsizing of the company.  His assertions of discrimination are tangential, speculative and not related to the terminating parties. He has suffered no actual financial loss as he found a job where he earns substantially more income.  He has failed to assert a legitimate claim for which relief can be sought. The Defendant's motion for Summary Judgment should be granted.

RESPECTFULLY SUBMITTED

_____/s/_____
Emanuel M. Levin
10 North Calvert Street
Baltimore Maryland 21202
(410) 727-4973