3/2003  13:23     4106595370                    LAW OFFICES                              PAGE  02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEFFERY S. DAWSON | * | |
|       Plaintiff | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| STRATICON CONSTRUCTION | * | CASE NO. JFM-03-CV6 |
| SERVICES, L.L.C. | * | |
|       Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### AFFIDAVIT

I, Bret Comar, am over the age of eighteen and competent to testify concerning the following facts:

1. I am a Managing Member of Straticon, L.L.C. which is located at 8767 North 32nd Street, Richland, Michigan, 49083.

2. That Straticon, L.L.C., has a corporation which did business in Maryland under the name Straticon Construction Services, L.L.C..

3. I was one of the officers in that corporation that made decisions regarding hiring and firing.

4. Straticon Construction Services, L.L.C., the Maryland office had approximately nine employers at its peak

5. Straticon Construction Services, L.L.C. was an active entity soliciting business with employees from January 2001 to July 2002

6. That as a result of business conditions, the company not being profitable and other financial issues it was determined to close down the Maryland office, lay off all employees at that facility and to withdraw from active solicitation of business. That Maryland office was losing

09/23/2003  13:23    4106595370    LAW OFFICES    PAGE  03

large sums of money and is still involved in litigation regarding completion of jobs in that area.

One employee was employed to help finish an ongoing project in New York, however, he is no

longer employed with the company and that project is still unfinished.

7. That I am familiar with the employee known as Mr. Jeffrey S. Dawson (Mr. Dawson).

8. That I was contacted by Mr. Dawson regarding allegations he alleged concerning Mr.

Nick Fornaro (Mr. Fornaro).

9. That although he contacted me regarding alleged abusive conduct, there was no racial

element to the complaint made by Mr. Dawson, i.e. his complaints were that Mr. Fornaro was

loud, demanding and could lose his temper. I was unaware of any racial component to his

concern until Mr. Dawson filed a complaint with the Baltimore Community Relations Division.

10. That notwithstanding the fact that there was no racial component alleged, I spoke

with Mr. Mike Finn, the President of the corporation, about Mr. Dawson' complaint regarding

Mr. Fornaro and know that Mr. Finn made arrangements to meet with and counsel Mr. Fornaro to

behave appropriately and professionally with all employees

11. That on or about September, 2001, due to continuing economic issues, there was a

general layoff at the company in which one or two individuals were terminated in the Maryland

area. Overall, there were approximately ten individuals let go at that time, and Mr. Dawson was

not one of them.

12. That I was advised that there were complaints concerning Mr. Dawson's performance

as an employee and that there were serious issues with his ability to perform services to the

clients' satisfaction. I had been trying to confirm this information since February 2, 2001. I was

able to confirm this information and speak to a client personally and he indicated that he would

not offer Straticon any more projects if Mr. Dawson was still involved. Mr Dawson's honesty

and integrity were placed in question.

13. In my investigation, although there were issues regarding both Mr. Dawson's and Mr. Fornaro's professional conduct, based upon statements of co-employees and other information that I had received, financial losses, and need for further reductions in force, I determined that Mr. Dawson was the party that should be let go first. There was no racial component to my determination.

14. Shortly thereafter, due to the continuing difficulties, financial concerns, need for further reductions in force and a complaint regarding Mr. Fornaro's lack of professionalism, he was also terminated. There was also no racial component or consideration in the termination of Mr. Fornaro. It should be noted that Mr. Fornaro is caucasion . It had never been alleged that Mr. Fornaro was racially discriminatory towards Mr. Dawson until after the termination of Mr. Dawson. I do not think that I knew of the allegations until after Mr. Fornaro was terminated. Mr. Fornaro was terminated due to difficulties at that locations as well as the lack of professionalism noted above. The timing of the terminations was not based upon any known claim of discrimination and was done independent of such consideration.

15. I received information before the termination that alleged that Mr. Dawson had been requesting improper payoffs from subcontractors while employed by Straticon. I was able to verify from one subcontractor that Mr. Dawson had requested such a payment from him. Although, I did not verify this before the termination, it was one of many issues, none of which were racially motivated, which swayed my decision to terminate Mr. Dawson.

16. That Mr. Fornaro did not fire Mr. Dawson nor did he exercise any control over my decision concerning Mr. Dawson's termination. In fact, as indicated above, Mr. Fornaro was under reviewed and was in fact terminated thereafter. His opinion regarding any individual would

not carry any authority or affect any opinion of mine at that time with our decision to terminate.

I HEREBY SWEAR AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT

THE FOREGOING STATEMENTS MADE IN THIS AFFIDAVIT ARE TRUE TO THE BEST

OF MY KNOWLEDGE, INFORMATION AND BELIEF.

BRET COMAR

9/23/03

Date