IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **JEFFREY S. DAWSON** * | |
| Plaintiff * | |
| v. * | Case No.: JFM- 03-CV6 |
| **STRATICON CONSTRUCTION** * | |
| **SERVICES, LLC** | |
| * | |
| Defendant | |
| * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Jeffrey S. Dawson, ("Plaintiff") brought suit against Straticon Construction Services, LLC, ("Defendant"), alleging that his termination from employment was in retaliation for his exercise of protected activity as well as being racially motivated. Plaintiff's suit against Defendant was filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§1891 and 2000e-2000e-17. Defendant filed a Motion for Summary Judgment and supporting Memorandum (together, "Motion"), alleging that there is no genuine issue of fact on any element of Plaintiff's case. Plaintiff, in response, maintains that there are genuine issues of fact that remain and therefore, the Motion cannot be granted. In addition, the Motion included new evidence not previously available to the Plaintiff, which the Plaintiff argues cannot be considered by the Court until the Plaintiff has had an opportunity to respond.

**Genuine Issues Before the Court**

As required by Fed. Rule Civ. P. 56(b), Defendant contends there are issue as to the following material facts:

1. In October 2001, Mr. Nick Forano, a supervisor of the Plaintiff was overheard by Plaintiff stating, "this black MF_____ is trying to take my job, and he did not use the say MF..." was a reference to the Plaintiff. (Deposition, p. 70; Exhibit #1).

2. Another statement attributed to Mr. Forano during November 2001, who stated directly to the Plaintiff, "if you try to take my job, I'm going to cut your black nuts off." (Deposition, p. 74; Exhibit #2).

3. Electronic mail received by Mr. Don DeSilva, a general manager for the Defendant, from Mr. Forano, in which Mr. Forano was "putting down" the Plaintiff because was African American. (Deposition, pp. 63-65; Exhibit #3).

4. A statement attributed to Mr. DeSilva, wherein he admitted that Mr. Forano had issues with another African American who worked for Aamco, when Mr. Forano also worked for Aamco. (Id. at 63)

5. Statement attributed to another Defendant employee, Sheila Hawkins, wherein she stated to Plaintiff that "Mr. Forano is a bigot". (Deposition, p. 66; Exhibit #4).

6. Plaintiff was uncomfortable around Mr. Forano, and was afraid of going hunting with him. (Deposition, pp. 57, 67-68; Exhibit #5).

7. Plaintiff received accolades for being the person who brought the biggest amount of revenue to the Defendant, yet, he was terminated. (Deposition, p. 83; Exhibit #6 and compare Exhibit #2).

8. Plaintiff was terminated despite being told by Mr. Comar, that he, Plaintiff, had a job as long as he wanted because of his revenue numbers. (Deposition, p. 102; Exhibit #7).

9. A statement attributed to Mr. DeSilva wherein he told Plaintiff that although Mr. Forano knew he (Forano) was going to get fired, "he would be damned if he was going to let this black motherfucker take his job, so he was going to fire him first". (Deposition, pp. 90-91; Exhibit #8).

10. Mr. Forano's additional reference to Plaintiff as a "black motherfucker". (Id. at 91).

11. Plaintiff's complained to Mr. Comar and Mike Finn, the president of the Defendant about Mr. Forano's comments in December 2001. Mr. Forano's attitude towards Plaintiff was better after that. (Deposition, pp. 83-84; Exhibit #9).

12. Whether Mr. Forano told Mr. Comar to terminate Plaintiff. (Deposition, p. 103; Exhibit #10).

13. A statement Mr. Forano made to the Plaintiff in a telephone conversation during January 2002, wherein he stated to Plaintiff, "you are a failure, you are a failure, ni___". Upon Plaintiff's request for Forano to repeat what he had left unsaid, Forano hung up the telephone. Plaintiff complained to Mr. Comar about this incident. (Deposition, pp. 85-86; Exhibit #11).

14. One month later, during February 2002, Mr. Comar and Mr. Finn terminated Plaintiff without supplying Plaintiff with the specific details as to the basis for the termination. (Deposition, pp. 53-54; Exhibit #12).

15. Whether in fact customers actually complained about Plaintiff's work product, and

>
> exactly what was allegedly stated to Plaintiff's superiors about Plaintiff.

16. Plaintiff was not provided an opportunity to respond to the allegations made against him by certain customers, despite the alleged significance of these complaints to Defendant as Defendant cited them as the reason for terminating Plaintiff. (Exhibit #12).

### Standard of Review

Rule 56 (c) of the Federal Rules of Civil Procedure provides that:

> summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue <u>material</u> fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct 2505, 91 L. Ed.2d 202 (1986) (emphasis in original).

The court must "view the facts and draw reasonable inferences in light most favorable to the nonmoving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994), but it also must abide by its affirmative obligation to ensure that factually unsupported claims and defenses do not proceed to trial. *Felty v. Graves-Humphreys Co.,* 818 F. 2d 1126, 1128, (4th Cir. 1987), (citing *Celotax Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986)).

A *genuine issue* exists where the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson* 477 U.S. 242,

248. *Miller v Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990). Whether a fact is considered to be *material*, hinges on the substantive law at issue. A fact is *material* if it might affect the outcome of the case. *Anderson,* 477 U.S. at 248. See, *Wright ex rel. Trust Co. of Kansas v Abbot Laboratories, Inc.,* 259 F.3d 1226, 1231-21 (10th Cir., 2001).

Under a claim of discrimination, the Plaintiff must be able to establish that the employer acted with discriminatory intent in undertaking an adverse action against him, including termination. Such intent can be demonstrated through the oft-articulated three step process established under the Supreme Court's decision in *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 93 S. Ct. 1817, 35 L. Ed.2d 668 (1973). Plaintiff must demonstrate a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he performed his job satisfactorily; (3) he suffered from adverse employment action; and (4) similarly situated employees who were not minorities received more favorable treatment. See, *Karpel v. Inova Health Systems Service*, 134 F.3d 1222, 1227-28 (4th Cir. 1998).

With respect to retaliation, Plaintiff can prove illegal retaliation under Section 1981 of Title VII, if he shows that "(1) he engaged in protected activity, (2) he suffered an adverse employment action at the hands of [his employer]; and (3) [the employer] took the adverse action because of the protected activity." *Spriggs v. Diamond Auto Glass*, 242 F.3d 172, 190 (4th Cir. 2001).

In each instance, what remains to be demonstrated are the genuine issues in dispute. Specifically, for Plaintiff's claim of discrimination, there is no doubt that, as an African American, he is a member of a protected class. Further, as he was terminated from employment with the Defendant, he did indeed suffer an adverse employment action. The Plaintiff's job performance was clearly satisfactory as he was one of Defendant's highest revenue producers. However, the

Defendant alleges that Plaintiff's job performance was unsatisfactory, and fired him allegedly because it had received a complaint about Defendant from an unnamed customer. What makes Defendant's business reason for firing Plaintiff more suspicious is the fact that neither Mr. Comas nor Mr. Finn explained the substance of the alleged customer complaints. The conflicting evidence raises an issue about Plaintiff's job performance.

Overlapping the issue regarding Plaintiff's job performance are the several and varied comments and instances that Plaintiff attributes to Mr. Forano. Defendant Motion attempts to dismiss these several occurrences as "isolated instances" and therefore insignificant. However, these several comments cannot be ignored or dismissed. The totality of these comments, even without the fact that Mr. Forano had similar issues while working with Aamco, cannot avoid the issue of whether or not Mr. Forano created an atmosphere of racial animus towards Plaintiff and the extent of Defendant's knowledge regarding that animus .

Further, the issue of retaliation has not been adequately resolve in the Motion. An important issue remains as to whether or not Plaintiff was fired as retaliation for complaining to his supervisors about Mr. Forano. Complaining to a supervisor about a possible discrimination is protected activity under Title VII, as Title VII affords employees the right to oppose any unlawful employment practice, which includes racial discrimination. Employees are thus guaranteed the right to complain to their superiors about suspected violations of Title VII. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645 (4th Cir. 2002). The timing of the termination is suspicious given the fact that it occurred after several complaints against Mr. Forano were raised by Plaintiff. Mr. Forano's termination, which preceded Plaintiff's does nothing to allay the specter of retaliation because Forano might have been fired to avoid future employment issues. Defendant's claim, which is

addressed in its Motion, that Plaintiff's termination was part of a legitimate downsizing of the Maryland operations itself raises several issues. For example, a downsizing or closing of the operation might have triggered certain federal notice requirements, including formal notice to the employees, pension termination requirements, health and welfare coverage issues, etc., If those were required, yet not done, the entire closing of the Maryland plant would clearly not be a legitimate basis for Plaintiff's termination.

Moreover, the subsequent closing of the Defendant's Maryland plant was not cited by either Mr. Comas nor Mr. Finn for his termination. It cannot be used subsequently as a shield to defend the termination action. Even so, once Plaintiff has made his claim, and the Defendant makes its case regarding a legitimate nondiscriminatory reason for Plaintiff's termination, it should be up to the jury to decide whether the adverse action was actually taken for the proffered reason, or if it was intended as a retaliatory measure.

Finally, the Court should strike the two affidavits proffered by the Defendant to support its Motion. These affidavits constitute new evidence, and the Court should not accept and consider the new evidence without first affording the Plaintiff an opportunity to respond to them.
See, *Beaird v. Seagate Tech, Inc.*, 145 F.3d 1159, 1163-65 (10th Cir. 1998).

## **Conclusion**

All of the above listed facts are material to the outcome of the case and are necessary to be determined by the jury. The contentions contained within the Motion only highlights the existence of genuine issues of material fact, whether such issues concern the Plaintiff's prima facie case of both discrimination and retaliation, or to the Defendant's alleged legitimate business reason for the Plaintiff's termination, or to issues addressing whether Defendant's business reason is pretextual.

There are too many unanswered discrepancies within the facts, which thus give rise to material issues. Accordingly, there cannot be a finding of summary judgment for Defendant based on the record currently before the Court. For these reasons, Plaintiff requests the Court to:

1. DENY the Motion;

2. Render a finding that summary judgment cannot be found in favor of the Defendant;

3. Note that the facts of this case raise genuine issues;

4. Award Plaintiff attorney fees and costs incurred in defending the Motion; and

5. Award any other relief the court believes serves the interests of justice.

                Respectfully submitted,

                /s/
                Jeffrey N. Pritzker, Esq., Bar #01546
                Margolis, Pritzker & Epstein, P.A.
                405 E. Joppa Road, Suite 100
                Towson, Maryland 21286
                410.823.2222
                *Attorneys for Plaintiff*